## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09CV288-03-MU

| | | |
|---|---|---|
| **KHOSROW PARMAEI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| **RICHARD NEELY,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

    **THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus

filed July 28, 2009 (Doc. No. 1); Respondent's Motion for Summary Judgment and

memorandum in support filed June 21, 2010 (Docs. No. 15 and 16); Petitioner's response filed

September 7, 2010 (Doc. No. 24); Respondent's reply filed September 9, 2010 (Doc. No. 25);

Petitioner's response filed September 14, 2010 (Doc. No. 27); and Respondent's reply filed

September 15, 2010 (Doc. No. 28).[1]

## I. FACTUAL BACKGROUND

    On February 3, 2002, Petitioner's wife, Meg, was found dead in her studio in their home.

Petitioner claimed that the he found his wife's body when he got up to use the bathroom during

the night.  He noticed that the window was open.  Black Mountain Police Department Detective

Lee Ribley ("Detective Ribley") testified that he observed Meg's body and noted cuts and

abrasions on her face and a small amount of blood "consistent with coming from those little cuts

---

[1] The Court also considered all of the briefs submitted by counsel with respect to whether
this Court could consider new evidence, (Doc. Nos. 31, 32, 37, and 38), and considered the legal
arguments made by counsel at the hearing held on March 9, 2011.

and abrasions." Detective Ribley also observed two pillowcases on Meg's bed, one of which appeared to have blood on both sides. Detective Ribley investigated whether anyone had entered the home though the open window in the studio. Detective Ribley found a heavy layer of dust covering the window shelf inside and outside the studio wall. Nothing outside the home or below the open window tended to show a person had climbed in or out of the window. No other signs indicated a forced entry into the home. Dr. Patrick Lantz performed the autopsy and testified that Meg's cause of death was due to asphyxiation by manual strangulation. There was evidence during the trial that Meg was unhappy in her marriage and was planning on divorcing Petitioner. In fact, Meg had moved a bed from the guest room into the studio room attached to the master bedroom and was sleeping in the studio.

## II. PROCEDURAL BACKGROUND

Petitioner was tried for the first-degree murder of his wife, Meg Parmaei, in Buncombe County Superior Court on April 5, 2004. The jury was unable to reach a verdict and the judge declared a mistrial. Petitioner was re-tried on September 3, 2004 and the jury found him guilty of first-degree murder. Petitioner was sentenced to life imprisonment. On November 7, 2006, the North Carolina Court of Appeals issued an opinion finding no error and dismissed an ineffective assistance of counsel claim without prejudice to raise it in a motion for appropriate relief in the trial court. State v. Parmaei, 180 N.C. App. 179, 636 S.E. 2d 322 (2006). The Supreme Court of North Carolina denied discretionary review on May 3, 2007. State v. Parmaei, 646 S.E.2d 537 (2007). On August 1, 2008 Petitioner filed an MAR in the Superior Court of Buncombe County. (Doc. No. 16-12 at 2-37). Judge Dennis Winner summarily denied the MAR on December 17, 2008. (Doc. No. 16-15 at 2-3). On February 6, 2009 Petitioner filed a certiorari petition in the North Carolina Court of Appeals. (Doc. No. 16-16 at 2-31). Certiorari

was dismissed on February 20, 2009.[2] (Doc. No. 16-21 at 2). Petitioner filed a pro se federal habeas application form in this Court on February 26, 2009. This Court initially refused to file the petition so Petitioner filed a motion in the Fourth Circuit seeking authorization to file a successive petition. On May 6, 2009, the Fourth Circuit ruled that authorization was unnecessary. Petitioner re-filed his *pro se* federal habeas application form on June 30, 2009 and this Court dismissed on grounds on non-exhaustion on July 6, 2009. Parmaei v. Jackson, 1:09cv232. Petitioner re–filed again on July 28, 2009. (Doc. No. 1). This Court dismissed the petition as untimely on August 4, 2009. (Doc. No. 2). The Fourth Circuit vacated and remanded on May 21, 2010. Parmaei v. Jackson, 1:09cv288. On June 15, 2010, the undersigned directed the respondent to file an Answer. (Doc. No. 13).

Petitioner argues that his trial counsel was ineffective for: (1) agreeing with the trial court's erroneous denial of the jury's request to ask questions of witnesses; (2) opening the door to prior bad acts evidence; (3)failing to use an expert regarding the forensic evidence; and (4) failing to investigate, develop or present evidence regarding a police report that someone tried to run the victim over. Petitioner also argues that his appellate counsel was ineffective for failing to raise on appeal the trial court's denial of a motion for a continuance to allow Petitioner to obtain an expert to conduct DNA testing of an anonymous letter; and for failing to raise on appeal the trial court's erroneous ruling that the letter was inadmissible. All of the issues contained in Petitioner's habeas petition were raised in his MAR and considered in the order denying Petitioner's MAR.

### III. NEW EVIDENCE

---

[2] Petitioner was represented on state post-conviction review by Mr. M Gordon Widenhouse, Jr.

On June 21, 2010 Respondent filed a Motion for Summary Judgment based on the issues raised and the evidence included in Petitioner's habeas petition.  (Doc. No. 15).   After receiving several continuances, Petitioner, now represented by David Belser, filed a response to Respondent's Motion for Summary Judgment on September 7, 2010, which included new/supplemental evidence including: (1) the August 2010 SBI report; (2) Petitioner's affidavit dated September 1, 2010; (3) an affidavit from trial counsel, William Leslie, dated August 17, 2010; (4) an affidavit from forensic expert, Mr. Girndt, dated September 7, 2010; (5) an affidavit from Karen Vaneman, dated September 7, 2010; and (6) an affidavit from Gerald Vaneman, dated September 7, 2010; and (7) an affidavit from Jeff Shuman, dated September 6, 2010. (Doc. No. 24).

With respect to the August 2010 SBI report authored by Chris Swecker and Michael Wolf,  Petitioner contends that the report was presented to the Court only as background information and context in which to analyze the conduct of trial and appellate counsel.  (SBI Report, Doc. No. 24-2 at 3-41).

Petitioner's affidavit dated September 1, 2010 states that he asked his counsel to investigate an attempted hit and run against the victim months before her death.  Petitioner contends that this evidence supported his defense that he did not kill his wife and may have suggested to the jury that someone else committed her murder.  Petitioner's affidavit also states that he asked his counsel, Mr. Leslie, to defend him by means of fingerprints, DNA and other evidence.  Counsel did not use the expert he had to analyze critical physical evidence.  Petitioner contends that this is particularly prejudicial because there was no physical evidence linking Petitioner to his wife's murder and because his first trial ended in a hung jury.  Petitioner's affidavit also states that he did not know anything about the letter nor did he write the letter

confessing to the crime which was found after the first trial near counsel table. (Petitioner's Affidavit, Doc. No. 24-1 at 2-10).

Petitioner's trial counsel, Mr. William Leslie, also submitted an affidavit dated August 17, 2010. Mr. Leslie's affidavit states that he did not attempt to introduce a police report filed by the victim that someone tried to hit her with a car. He states that his failure to do so was not part of any trial tactic or strategy. He also states that he inadvertently opened the door to evidence of Petitioner's earlier assault on Petitioner. He contends that eliciting this evidence was not a trial tactic or strategy and that such evidence was prejudicial to Petitioner. (William Leslie Affidavit, Doc. No. 24-7 at 2-4).

Forensic expert, Donald Girndt, submitted an affidavit dated September 7, 2010. Mr. Girndt stated that none of the evidence from the crime scene was tested at the scene or by the SBI laboratory. Mr. Girndt also attacked Detective Ribley's explanation for why the items with what "appeared to be blood" on them were not tested concluding that Detective Ribley violated all commonly held standards of crime scene investigation and evidence collection. Mr. Girndt states that fingernail scraping were taken from the victim at the autopsy and from the defendant by the police, but the SBI determined that there was an insufficient quantity to be tested . However, the now known practice at the SBI permitted an SBI analyst the discretion to report a test as inconclusive when in his/her opinion there was insufficient material to test. Given that practice, there is no way to know in this case, without further discovery, whether there was a preliminary test performed on the fingernail scrapings which was inconclusive or negative but was reported as an insufficient sample to test. Finally, Mr. Girndt states that Petitioner's counsel obtained the funds from Indigent Defense Services for him to consult as a crime scene expert in this case, but counsel never asked him to examine any of the physical evidence from the crime

scene.  If he had been asked to examine the evidence he would have rendered an opinion about the method of origin of what appeared to be blood on the various items; he would have suggested that preliminary tests be conducted on such items to determine whether the presence of blood was indicated and could have recommended further testing to determine if the substance was human blood and if so, whether it was the victim's or the defendant's.  He states that he also would have done a visual examination of the clothing of the victim and the defendant to determine the presence of blood.  (Donald Girndt Affidavit, Doc. No. 24-9 at 2-8).

Karen and Gerald Vaneman both submitted affidavits dated September 7, 2010 which state that they met Petitioner in 2003 in connection with the ACLU's efforts to help him with religious issues related to his confinement at the Buncombe County Detention Center.  After Petitioner's  second trial, which resulted in his conviction for first-degree murder, Karen and Gerald Vaneman met with Petitioner's trial counsel.  When asked why he did not have Petitioner's wedding ring tested for blood, DNA or other substances, counsel responded that "[h]e believed that [Petitioner] was guilty; that he feared the results of any examination might be bad for [Petitioner]; and that he would have to turn over the results of those bad results to the prosecutors."   They also asked counsel why he did not pursue defense testing of hair, fiber, blood, and DNA, to which he responded that "he only had so much time and money available; and that he was afraid that any such evidence would point to [Petitioner] and not a third party, and that he would have to disclose these results to the DA's office." (Affidavits of Karen and Gerald Vaneman, Doc. Nos. 24-10 and 24-11).

Jeff Shuman submitted an affidavit dated September 6, 2010 which states that he is an acquaintance of the Petitioner and that after the Petitioner was send to jail, he was given a key to Petitioner's home so that he could move some of Petitioner's belongings from his house to his

garage so that the house could be rented out.  Mr. Shuman states that he was present one day

prior to Petitioner's first trial or between the first and second trial when Petitioner's lawyer and

investigator came to the house and took a box that contained a wedding ring.  To Mr. Shuman's

knowledge, the ring was never returned to the house or the garage.  (Affidavit of Jeff Shuman,

Doc. No. 24-16 at 2).

In response to this new evidence filed in conjunction with Petitioner's response to the

State's Motion for Summary Judgment, the State filed a reply brief arguing that Petitioner's

entire federal habeas petition should be dismissed on the grounds of non-exhaustion.

Specifically, Respondent contends that the SBI report "presents a whole new and different set of

concerns not raised in Petitioner's original federal habeas petition or in state court."  (Doc. No.

28 at 2).  As such, Respondent contends that these "references and assertions" are non-exhausted

claims under Winston v. Kelly, 592 F.3d 535, 550-52.  Petitioner argues that "[t]he information

provided about the SBI laboratory was, as clearly stated in the Introduction to Response,

intended to give this Court the necessary background and context in which to analyze the

conduct of trial and appellate counsel."  (Doc. No. 27 at 2.)  Petitioner contends that he has not

added any new claims and that the factual bases for all of his claims were squarely presented to

and adjudicated on the merits by state MAR court and  that he has fully complied with the

exhaustion rule in 28 U.S.C. § 2254(b)(1)(A).

With respect to the new affidavits, the Respondent argues that such affidavits cannot be

considered by this Court for purposes of evaluating  his claims under the deferential standards of

28 U.S.C. § 2254(d)(1) and (e)(2).  Bell v. Jarvis, 236 F.3d 149, 171 n. 13 (4th Cir. 2000).

Petitioner did not specifically respond to this argument, but instead argued that Vasquez v.

Hillary, 474 U.S. 254, 258 (1986) allows "supplement[ation] and clarif[ication] of the state court

factual record" so long as it does not "necessarily change a claim so dramatically as to require the state courts be given a new opportunity to hear the issues."[3]  (Doc. No. 27 at 2).

On March 9, 2011, the undersigned conducted a hearing regarding the evidence not previously presented to the state court and allowed both sides to argue as to whether and on what authority, this Court should consider the evidence in connection with Petitioner's habeas petition.  (Doc. No. 39).

In a decision recently published, the Supreme Court has conclusively determined that under 28 U.S.C. § 2254(d)(1), a federal court may not consider new evidence in support of a claim, when that evidence was not presented in support of the claim in state court.  Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388 (2011).[4]  The Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made" and that the record under review must be "limited to the record in existence at that same time., i.e. the record before the state court."  Id. at 1398.  The Court also noted that § "2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." Indeed, the Court explained that "[a]t a minimum, [] § 2254(e) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court."  Id. at 1401.  The Court went on to explain that "[a]lthough state

---

[3] The Court notes that Vasquez, was a pre-AEDPA decision in which the federal court, pursuant to a valid exercise of its power to expand the record,  directed the parties to present supplemental evidence.  Vasquez v. Hillary, 474 U.S. 254 (1986).  The Court held that such evidence, which was directed by the district court, did not fundamentally alter the legal claim considered by the state court.

[4] The Court also concluded, that because "2254(d)(2) includes the language 'in light of the evidence presented in the State court proceeding,' the restriction of federal review under that provision to the state court record applies with 'additional clarity.'" Cullen, at 1400 n. 7

prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id.

In the wake of the Supreme Court's decision in <u>Cullen</u>, Petitioner now argues that the state court relied on an incomplete record when it denied his MAR by failing to afford him an adequate opportunity to reply to the state's answer and in denying him an evidentiary hearing. Petitioner argues that he is entitled to an evidentiary hearing in this Court on his claims and contends that he did not fail to develop the factual basis of his claim in state court. In support of his argument, Petitioner cites to <u>Winston v. Kelly</u>, 592 F.3d 535 (4th Cir. 2010) and <u>Wilson v. Workman</u>, 577 F.3d 1284 (10th Cir. 2009). However as noted in <u>Atkins v. Clarke</u>, 642 F.3d 47, 49 (1st Cir. 2011) and in <u>Hurst v. Branker</u>, 2011 WL 2149470, * 9 (MDNC, June 1, 2011), <u>Winston</u> may not have survived <u>Cullen</u>. <u>See</u> <u>Cullen</u>, 131 S. Ct at 1417 (Sotomayor, J., dissenting) (construing majority opinion as rejecting at least part of analysis in <u>Winston</u> and agreeing with that aspect of majority opinion). Further, although the <u>Winston</u> Court suggested that "when a state court forecloses further development of the factual record ... [and] the record ultimately proves to be incomplete, deference to the state court's judgment [under 2254(d)] would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for purposes of 2254(d)," <u>Winston</u>, 592 F.3d at 555-56, the Court also stated that such a finding should only attach where the petitioner satisfied the "exacting burden []" of "diligently develop[ing] the record in state court," which it implied required more than asking in a conclusory fashion for an evidentiary hearing in state court. <u>Id.</u> at 556-57. Therefore, in order to satisfy <u>Winston</u>, "Petitioner must prove that the state court improperly

denied him an opportunity to develop the factual record in the face of well-supported requests and that he exercised due diligence in gathering available information, requirements that mirror the standard under § 2254(e)(2) (which applies even if § 2254(d)does not)." Hurst v. Branker, 2011 WL 2149470 (MDNC, June 1, 2011). Petitioner does not even attempt to meet this burden relying only on his conclusory request for an evidentiary hearing in state court and the state court's decision on his MAR without giving him an opportunity to reply to the state's answer.

In the instant case, Petitioner has repeatedly argued that all of his current claims were raised in state court and adjudicated on the merits. (Doc. No. 27 at 1) This Court finds that Petitioner's claims were all adjudicated and denied by Judge Winner on the merits and as such are entitled to deferential review pursuant to 28 U.S.C. § 2254(d). See Richter, __ U.S.__, 131 S. Ct 770 (Court unanimously held that state court's one sentence summary order denying a defendant's claims without giving reasons was an adjudication on the merits entitled to deferential review under 28 U.S.C. § 2254(d)). Therefore, pursuant to the Supreme Court's recent decision in Cullen v. Pinholster, this Court will not consider any of Petitioner's new evidence supporting his claims, i.e. the Swecker & Wolfe Report and the new affidavits and any other materials, not presented to the MAR court when considering the claims contained in Petitioner's habeas petition.

### IV. STANDARD OF REVIEW

#### A. Summary Judgment Standard of Review

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to

the party opposing the motion. <u>Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

**B. Section 2254 Standard of Review**

In addition to the summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) sets forth:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is "difficult to meet." <u>Harrington v. Richter</u>, 562 __ U.S. __, 131 S. Ct. 770, 786, (2011). A claim is considered "adjudicated on the merits" when it was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." <u>Thomas v. Davis</u>, 192 F.3d 445, 455 (4th Cir. 1999). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). An unreasonable application is different from an incorrect application of federal law, the former being the

requisite showing.  Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410).  Therefore, this Court may not issue the writ even if it concludes in its independent review that the state court made an incorrect or erroneous application of the correct federal principles.  See Williams, 529 U.S. at 412.  In order to grant relief, this Court must establish that the state court ruling was both incorrect and objectively unreasonable.  McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).  When examining whether a state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), a reviewing court must be mindful that a "determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner rebuts this presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

This standard of review is "quite deferential to the rulings of the state court."  Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001).  This deference extends to summary dismissals.  See Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 784.  Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000).  A habeas petitioner bears the burden of establishing his claim.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

In contrast, if a petitioner has properly presented a claim to the state court, but the state court has not adjudicated the claim on the merits, a federal court reviews questions of law and mixed questions of law and fact de novo.  Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000).

## V. ANALYSIS

**A. Ineffective Assistance of Trial Counsel**

12

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In order to satisfy the performance prong, the Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough to show that the errors had some effect on the outcome. Strickland, at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial. Id.

_____The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Establishing that a state court's application of Strickland was unreasonable under § 2254 is a difficult task as the standards under Strickland and § 2254 are quite deferential. Harrington v. Richter, __ U.S. __, 131 S. Ct 770, 788 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

**1. Juror Question**

Petitioner first contends that his counsel was ineffective because his lawyer agreed with the trial court's erroneous denial of the jury's request to ask questions of witnesses. [5] The jury sent a note to the trial court which read:

1. Is the jury allowed to take notes during the trial?

2. Can the jury ask each other for clarification during the breaks?  I know we are not allow[ed] to discuss the case, but could we ask questions like "what was someone's name" or what time did he say."

(Doc. No. 24-4 at 2).

The trial court brought this inquiry to the attention of the lawyers and stated , "I'm going to tell them if you don't hear it, you can ask someone to repeat their answer, but you can't ask for any clarification.  If you do, you're getting out of the role of being a juror.  If they don't hear something, they can ask somebody to repeat it, but they can't ask them to specify, clarify or explain.  That's not the jury's role." (Trial Transcript at 257).  Defense counsel responded, "I believe that's the state of the law."  (Id.)

The Court then instructed the jury as follows:

> Second question: Can the jury ask each other for clarification during the breaks?  Absolutely not.  I said it yesterday.  You are not to discuss the case with anyone.  Asking about clarification is discussing the case. Do not talk about it. Do not go back and ask one another during the break what did witness so-and-so say.  That's discussing the case.  You cannot talk about it at any time until the case is concluded, and then only after you've heard the lawyer's arguments and my instructions on the law.
> And it says, 'And I know we're not allowed to discuss the case.  Can we ask questions, like what was someone's name or what time did he say?'  The only thing you can ask as a member of the jury is for a witness to repeat an answer if you don't hear it.  Your role is not to try to be a lawyer or try to investigate the

---

[5] Petitioner withdrew his claim that the state trial court erred in denying the jury's request to ask questions of witnesses.  Doc. No. 24 at 9, n. 1.

matter or ask questions.  That's these fine folks' jobs.  Your job is to be a fact finder, and that means paying close attention to everything that's being said here in the courtroom.  If you don't hear something, by all means, raise your hand and say, 'I can't hear,' or "Would the witness repeat the answer?'  That's fine.  But if you want to ask a follow-up question, that is not permitted.  That is not the role of the jurors.

(Trial Transcript at 259).  The MAR court considered this claim and denied this claim.

Specifically, Judge Winner summarily denied the claim on the merits stating:

With respect to the Defendant's first ground in which the Defendant contends that he had ineffective assistance of counsel because counsel did not know that a trial judge has discretion to allow jurors to ask questions, this Court concludes that there is no showing that it is likely that the Court would have allowed jurors to ask questions or that if the judge did allow jurors to ask questions that it would have made any difference in the outcome of this case.  This Court concludes as a matter of law that there is no showing of any prejudice to the Defendant by the Court's ruling or his attorney's misunderstanding of the law.

(MAR Order: Ex. 8 to Respondent's Motion for Summary Judgment).  This state court adjudication on the merits did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., <u>Strickland v. Washington</u>, nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings.

Here, even if this Court were to assume deficiency for counsel's apparent failure to know the law with respect to whether the jury could ask questions of a witness, Petitioner has not established the prejudice as is required for an ineffective assistance of counsel claim pursuant to <u>Strickland</u>.  The trial judge responded to a general pre-trial question by the jury as to whether jurors could ask questions of witnesses.[6]  However, there was not a specific question by a juror during trial regarding any particular witnesses' testimony and Petitioner cannot establish

---

[6] The Court notes that it is not entirely clear whether the jury was asking if they could ask questions of the witnesses or one another.

prejudice. Petitioner's ineffective assistance of counsel claim is denied pursuant to the

deferential standards of review contained in section 2254 (d) and (e). See Early v Packer, 537

U.S. 3, 8 (2002) (state court need not cite or even be aware of United States Supreme Court

cases in order to obtain deferential standards of review.[7]

### 2. Prior Bad Acts

Petitioner contends that his counsel was ineffective for opening the door to prior bad acts

evidence. Specifically, Petitioner contends that his lawyer was ineffective for opening the door

to testimony from Tiffany, one of the victim's daughter's, that Petitioner threw a record player at

the victim 14 years before the murder.

Petitioner raised this issue on direct appeal and the North Carolina Court of Appeals held

that Petitioner had opened the door to this testimony by asking Tiffany on cross-examination if

she had ever seen any acts of domestic violence by Petitioner against her mother. On re-direct,

the prosecutor was allowed to ask her what violent acts she had seen Petitioner commit toward

her mother. She testified, "I stood outside their bedroom door in the house in Talladaga and

listened to a screaming match and at one point, there was a large banging noise. And afterwards

he left and came out, and apparently he had thrown a record player at her." (Trial Transcript at

351).

Petitioner also raised this issue in his MAR and Judge Winner denied the claim on the

merits as follows:

Defendant contends that his counsel was ineffective because he opened the door
to evidence presented that the Defendant had been violent to the victim fourteen

---

[7] Further, "[i]n assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003).

years before the homicide in this case. The trial court properly admitted evidence of prior bad acts of violence by the Defendant upon the victim other than this one incident fourteen years before. Therefore the Defendant has failed to show that the other act of violence being presented to the jury materially affected the verdict in this case. This Court concludes that it is unreasonable to believe that said evidence was likely to have made a difference in the verdict.

(MAR Order: Ex. 8 to Respondent's Motion for Summary Judgement). This state court adjudication on the merits did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., Strickland v. Washington, nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings.

In reviewing the trial transcript, the undersigned notes that Christiane Smith, another daughter of the victim, testified that she had seen the Petitioner push the victim in front of a moving vehicle and try to hit her with a piece of firewood. (Trial Transcript at 302-03). She also testified that she heard the Petitioner threaten her mother "pretty often." Id. Moreover, the Court notes that the testimony in question was admitted after Tiffany testified that her mother "was in a domestic violence situation" and that a few days before she was murdered, Tiffany had complied a list of resources for her which included Helpmate, an organization that helped domestic violence victims. (Id. at 339-345, 349-50).

Even if this Court assumes that counsel made a mistake sufficient to establish the deficiency prong of the Strickland test by opening the door to Tiffany's testimony about the 14-year old incident, Petitioner has not established prejudice as required by Strickland in light of the other bad acts testimony that was admitted. Moreover, there is a reasonable argument that counsel satisfied Strickland's deferential standard. Richter, 131 S. Ct. at 788. Therefore, Petitioner's ineffective assistance of counsel claim is without merit and is also summarily denied

17

pursuant to § 2254(d) and (e).

### 3. Expert Analysis

Petitioner contends that his counsel was ineffective because he failed to use an expert to examine the house, door, window, items in the bedroom and studio, clothes of the victim and Petitioner, and also fingerprints and DNA, which Petitioner argues, could show that he did not commit the crime and might indicate who did. Petitioner raised this issue in his MAR and Judge Winner summarily denied it as follows:

> With respect to the Defendant's second ground, that he had ineffective assistance of counsel, this Court finds that in fact Defendant's counsel did use a forensic consultant and concludes that there is no evidence described in the motion that had any other forensic experts been employed the result of the trial would have been any different than it was.

MAR Order: Ex. 8 to Respondent's Motion for Summary Judgment). This state court adjudication on the merits did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., <u>Strickland v. Washington</u>, nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Counsel did consult a forensic expert. Indeed, Mr. Girndt, testified in connection with a letter Petitioner was moving to have admitted, that he was hired in this case, "[i]nitially for crime scene analysis and then secondarily as this letter appeared to process it to see if we could obtain any fingerprints from it." (Trial Transcript at 657-58).

Because Mr. Girndt was originally hired for crime scene analysis, but not called as a witness to testify at trial about his findings, this Court can assume that trial counsel chose to use the lack of a thorough police investigation to bolster his defense that someone else committed the crime and that the police had not bothered to investigate any other possibility other than that

18

the Petitioner committed the crime. In fact, counsel successfully pursued this strategy in the first

trial that ended in a hung jury. In the second trial, counsel's cross-examination and closing

argument focused on the holes in the investigation. For example, the following exchange took

place during the cross examination of Detective Ribley, the lead investigator in this case:

Q: [defense cousel] Now, you took great care to collect a number of the items of evidence, didn't you, sir?

A: [Detective Ribley] Yes, sir.

Q: And you've already identified those items from the State, haven't you sir.

A: Yes, sir.

Q: And except for what we've already discussed that you sent off, the blood, the hair, the saliva and the ring, you never had any of those – any of that evidence tested by the SBI lad, did you?

A: Correct.

Q: You never asked them to test what you say appeared to be blood, did you?

A: No sir.


Q: You took the clothes that Khosrow was wearing that night, did you not?

A: Yes, sir.

Q: And you're aware that there could be trace evidence on those clothes"

A: Yes, sir.

Q: Hair, fibers, blood, and you didn't have that tested either, did you?

A: No, sir.

Q: Any you collected Meg's clothing, did you not?

A: Yes, sir.

Q: And you're also aware that there could have been hair, fibers, minute trace

> evidence not apparent to the naked eye?

A:     Correct.

Q:     And you didn't have that tested, did you?

A:     No sir.

(Trial Transcript at 519-20).  Counsel continued with this point on re-cross examination and in closing argument.  (Id. at 531-32, 928-30).  During closing argument, prior to arguing about reasonable doubt, counsel argued: "[t]o sum up again, Ribley and the police department thought they had their man and that was it; they quit right there.  Nothing checked, none of the clothes.  Didn't need to.  Wasn't consistent, whatever.  And don't you think something in that room could have been fingerprinted?  Come on."  (Trial Transcript at 935).  It appears that counsel made a strategic decision to focus on the deficiencies in the state's forensic investigation rather than attempt to obtain or use additional defense forensic experts to testify.  The Supreme Court recently held that under Strickland, a state court could reasonably conclude that a competent attorney could elect a strategy of cross-examination to discredit a state's blood expert, rather than a strategy requiring the use of defense blood experts.  Harrington v. Richter, 131 S. Ct. 770, 790 (2011).  Here, there is a reasonable argument that counsel satisfied Strickland's deferential standard.  Richter, 131 S. Ct. at 788.  Petitioner's ineffective assistance of counsel claim is without merit and is also summarily denied pursuant to § 2254(d) and (e).

### 4. Other Evidence

Petitioner contends that his counsel was ineffective because he had a police report from Black Mountain stating that someone tried to run over the victim with a car, but counsel failed to investigate, develop or present this evidence.

Petitioner raised this issue in his MAR and Judge Winner denied the claim as follows:

> The Defendant contends that he had ineffective assistance of counsel because Defendant's counsel did not present evidence that a prior assault against the victim in this case by some unknown person had been committed. This Court concludes that such evidence was inadmissible because it was irrelevant and therefore Defendant's counsel was not ineffective in not presenting it.

(MAR Order: Ex. 8 to Respondent's Motion for Summary Judgment). This state court adjudication is correct and will be upheld under the deferential standard of review contained in § 2254(d) and (e). See Early v Packer, 537 U.S. 3, 8 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential review). There is a reasonable argument that counsel satisfied Strickland's deferential standard. Richter, 131 S. Ct at 788. Indeed, even if this Court were to assume deficiency under Strickland for counsel's failure to present the police report, Petitioner cannot establish prejudice. Under Strickland, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, Strickland, asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct at 791-92. Petitioner has not established this burden. He has not met the prejudice burden and therefore his claim is without merit and is also summarily denied pursuant to § 2254(d) and (e).

## B. Ineffective Assistance of Appellate Counsel

### 1. Continuance

Petitioner contends that his appellate counsel was ineffective for failing to raise on appeal

the trial court's denial of a motion for a continuance to allow Petitioner to obtain an expert witness to conduct DNA testing of an anonymous letter indicating someone else committed the crime.

In April 2004, while the jury was deliberating in the first trial, another case was being tried in the same courtroom. A defense attorney in that case, Ms. Kara Wood, testified at a <u>voir dire</u> hearing that she was working at defense table during a break. When the Parmaei jury had a question, she and her co-counsel stepped back from defense table to allow Petitioner and his attorney to be seated. Ms. Woods told the trial judge that after Parmaei and his attorney left the table, she went back to the table and found the envelope on top of her papers. (Trial Transcript at 665-66). She gave the envelope to Petitioner's lawyer and he opened it and found a rambling, disjointed letter filled with profanity, suggesting Petitioner did not commit the murder. (Respondent's Ex. 9 at attachment 4).

Petitioner moved to continue the case and moved for the state to test the letter and envelope for saliva and DNA and run it though the DNA database. The letter and envelope had already been handled by several people, including counsel and the defense forensic examiner. (Ex. 3 at 50-51, 56-57). The trial court ruled as follows:

> This letter was apparently found in open court on the defense table during trial at the previous hearing during the jury deliberations. The letter has apparently been in the defendant's hands since given to him by other attorney's, which would have been in April of this year. The letter, the Court will find for the purposes of this motion, only was found under circumstances and in such condition as making its authenticity so questionable that the Court does not feel it is appropriate for the State to be ordered to conduct testing, there being no way to determine if there would be any identifiable results from the testing or what the results could show if the tests ruled out that the defendant was the author.

(Motions Hearing T.P. 27).

The Petitioner raised the substance of this claim in his MAR and Judge Winner summarily denied the claim as follows:

> With regard to each of these claims the Defendant alleges in the first trial in this case that a letter was found on counsel's table. In the second trial the trial Judge denied a motion by Defendant's counsel for a continuance so that the letter could be tested forensically. During the trial the trial court held that the letter was inadmissible. The Defendant further alleges that his appellate counsel was ineffective because he did not bring forward in his brief the two above described rulings by the trial court. This Court concludes that the letter was inadmissible in the trial regardless of what any forensic expert concluded about it. The circumstances upon which the letter was found was sufficiently unreliable that it would preclude the admissibility of the letter. Therefore, this Court concludes that the trial court's ruling in both respects was correct and Defendant did not have ineffective assistance by his appellate counsel because the counsel failed to pursue these grounds on appeal. This Court further concludes that it is highly unlikely that the Court of Appeals would have granted the defendant a new trial under the circumstances presented even if the issues had been raised on appeal.

(Ex. 8).

In order to show ineffective assistance of appellate counsel, Petitioner must satisfy the two-part test outlined in <u>Strickland v. Washington</u>. <u>Evicts v. Lucy</u>, 469 U.S. 387 (1985). Here, Petitioner cannot show deficiency or prejudice. Indeed, the claim regarding the letter was so speculative, that it was reasonable for appellate counsel not to have raised it. With respect to prejudice, even if counsel had raised the issue, Petitioner can show no reasonable probability of a different result. There is reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard. <u>Richter</u>, 131 S. Ct. at 788. Moreover, the state court adjudication is correct. It did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., <u>Strickland v. Washington</u>, nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Therefore, Petitioner's ineffective assistance of appellate counsel claim

is without merit and is also summarily denied pursuant to § 2254(d) and (e).

**2. Exclusion of the Letter**

Petitioner contends that his appellate counsel was ineffective because counsel did not

raise on appeal that the trial court's erroneous ruling that the anonymous letter was inadmissible.

The letter was excluded by the trial court as follows:

| | |
|---|---|
| The Court: | Well, the first thing is all the cases that have been handed up cited by the defense talks about evidence. It's presumed that something is admissible to begin with. This document of unknown origin is clearly hearsay: it is not a statement against someone's penal interest, for we don't know who authored it. It can't be a statement against the world. I'm going to make the following finding:<br>First, that the document - I'm going to make several findings. First, that the document proffered, including the envelope addressed to Mr. Leslie that was discovered by – |
| Mr. Leslie: | Kara Wood. |
| The Court: | Ms. Wood at counsel table at a short time after Mr. Parmaei had been seated there is not – first all, the Court will conclude that it is hearsay and inadmissible for these grounds; Second, the Court will also conclude that the document is not relevant to these proceedings.<br>The Court will also find and conclude that the document is not reliable, it being of unknown origin, the author of it not being present in the court and subject to cross-examination, at least not known to be in court, and without that, the defendant's right of confrontation is not being violated otherwise, every anonymous call into the police of an unknown origin where someone is confessing to be the killer or having committed the crime could be introduced at that person's trial, even though it never led to anything as far as investigation or any leads that might point to any other person. The motion to allow that is denied. |

(Trial Transcript at 881-82). Petitioner raised this claim in his MAR and Judge Winner denied

the claim stating that "This Court concludes that the letter was inadmissible and would have

been inadmissible at trial regardless of what any forensic expert concluded about it. The circumstances upon which the letter was found was sufficiently unreliable that it would preclude the admissibility of the letter" (MAR Order: Ex. 8 to Respondent's Motion for Summary Judgment). The MAR court concluded that the trial court's ruling was correct and that Petitioner did not have ineffective assistance by his appellate counsel and that it is highly unlikely that the Court of Appeals would have granted the Petitioner a new trial even if the issue had been raised and pursued on direct appeal. (Id.) The MAR's court's decision is correct.[2] It did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., Strickland v. Washington, nor is it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. There is a reasonable argument that counsel satisfied Strickland's deferential standard. Richter, 131 S. Ct. at 788. Therefore, Petitioner's ineffective assistance of appellate counsel claim is without merit and is also summarily denied pursuant to § 2254(d) and (e).

## VI. ORDER

**THEREFORE IT IS HEREBY ORDERED** that:

(1)    Respondent's Motion for Summary Judgment (Document No. 15) is **GRANTED**;

(2)    Petitioner's § 2254 Motion (Document No. 1) is **DENIED** and **DISMISSED**; and

(3)    Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court

---

[2] See State v. McNeil, 326 N.C. 712, 721 (1990) ("evidence must (1) point directly to the guilt of some specific person and (2) be inconsistent with the defendant's guilt."; State v. Loftis, 185 N.C. App. 190, 201-02 (2007) (same). Petitioner cites to Chamber v Mississippi, 410 U.S. 284 (1973) in support of his claim. Unlike the evidence at issue here, the evidence of third party guilt in Chambers, was strong, i.e. a written confession by a third party with three live witnesses who would testify that the third party also confessed to them. In contrast, the evidence at issue here is anonymous and found under unreliable circumstances with no witness to testify as its authenticity.

declines to issue a certificate of appealability as Petitioner has not  has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

**SO ORDERED**.

Signed: September 9, 2011

Graham C. Mullen
United States District Judge